In re the MARRIAGE of Roger E. WOODRUM, Appellant,

and

Hildegard I. Woodrum, Appellee.

No. 79CA0096.

Colorado Court of Appeals, Div. II.

Sept. 11, 1980.

Duitch, Duitch & Gerig, Stephen H. Duitch, Colorado Springs, for appellant.

Lynn L. Olney, Colorado Springs, for appellee.

SMITH, Judge.

In this marriage dissolution case, husband appeals the valuation and subsequent distribution of marital assets and an order of court finding him in contempt. We affirm in part and remand for further proceedings.

The parties had been married for twenty-four years at the time of the dissolution. Husband was retired from the military after thirty years of service. The trial court determined that although retirement pay, the right to which accrued during the period of the marriage of the parties, was not a marital asset, the amount thereof, $996 per month, could be considered in the computation of maintenance. The marital property of the parties consisted principally of $13,700 equity in a home valued at $43,500. From this equity, however, the court deducted an estimated commission of $3,000 and estimated federal taxes of $2,500, which it found would be incurred if the home was sold. It then determined that this net equity, $8,200, should be divided equally between the parties. The court further determined that wife could remain in the home, but in the event she sold the house, and the estimated capital gains taxes and sales commission were greater than the actual taxes and commissions, she was responsible for restoring one-half of this difference to husband.

The court also determined that the value of household goods and furniture was $3,250. This amount was divided evenly between the parties. Husband also received miscellaneous other items, but was made responsible for paying $483 per month to satisfy more than $9,000 in unsecured liabilities.

The division of property was accomplished by awarding wife the house and $260 per month as maintenance. However, husband was allowed an offset of $60 per month on his maintenance payments as a method of payment to him from wife for the portion husband was entitled to receive as equity in the family home and other assets.

I.

Husband asserts that the trial court erred in deducting an estimated real estate commission and capital gains tax from the gross equity in the home belonging to the parties. We disagree.

Husband cites *Rhoades v. Rhoades*, 188 Colo. 423, 535 P.2d 1122 (1975), as authority for prohibiting consideration of the net equity in the home of the parties. We find husband's reliance upon this case to be misplaced. In *Rhoades*, the Supreme Court held that it was not error for the trial court to value the home based upon gross equity rather than equity after selling costs. In our view, although that case authorizes a different approach under its facts, it does not prohibit the trial court from considering net equity. Although the court in *Rhoades* determined that a calculation of sellers' costs to be incurred at some future time leads to results which are speculative at best, the court qualified this statement by relating it to the facts there at issue. In *Rhoades*, the trial court had balanced the disallowance of sellers' costs against the fact than an offsetting interest payment to the party not receiving the home was not required.

■ The purpose of the division of marital property is to allocate to each spouse the equity which belongs to him or her. *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978). Where a trial court, acting within its discretion, determines that an equitable division of property can best be achieved by considering the net equity rather than the gross equity of the property, this court will not interfere with that determination. Although it is true, as husband asserts, that the amount attributable to sellers' costs cannot be determined with precision, we conclude that there is no abuse of discretion by a trial court in allowing a reasonable value to be deducted from the gross equity of a home as an amount representing sellers' costs. Thus, we will not disturb this determination on review. *Graham, supra.*

Furthermore, here, the court in making a division of property not only allowed a deduction for potential sellers' costs, but also provided a means for compensating husband in the event that the actual sellers' costs differ from the estimated cost determined by the court. Accordingly, we reject husband's contention that the trial court erred in deducting sellers' costs.

II.

Husband next asserts that the trial court erred in valuing certain household items and furnishings at $3,250. He asserts that the value should be $6,500 as established by affidavits. We disagree.

■ Generally, in making a division of property, the trial court is charged with finding the approximate current value of all property owned by the parties. *In re Marriage of Weaver*, 39 Colo.App. 523, 571 P.2d 307 (1977). Here, there was evidence that the value of the property in question was $6,500. There was also evidence, however, that when certain items of this property were sold, they brought only approximately one–half the value that had been ascribed to them. Thus, we conclude that the trial court reasonably could infer that the current value of the property was less than that ascribed to the property in the affidavit. We, therefore, affirm the finding of $3,250 as the value of the household items and furnishings. *Graham, supra.*

III.

We also reject husband's assertion that the trial court erred in the division of property by allowing marital fault to enter into its calculations.

The trial court, in its ruling on the motion for new trial, stated:

"Furthermore, the court would express its opinion that it is appropriate to take into consideration the sentimental attachment of someone in Mrs. Woodrum's position of the attachment of the house and what it might mean to her. She wasn't in favor of the divorce, she didn't think the marriage was broken, and she didn't want it, so the court notes Mr. Woodrum was the one bringing this action. It was a marriage of long standing. Mrs. Woodrum is left in the way of preserving her sense of stability, and the house means something to her beside[s] just a place to live in.

We do not consider this a violation of § 14-10-113(1), C.R.S.1973 (1979 Cum. Supp.) which requires that the marital property be divided "without regard to marital misconduct."

▇▇▇ We consider the trial court's comments as merely an explanation as to why it did not order the home sold, and instead, gave it to wife as part of her share in the marital property. The specific circumstances and feelings of each party are appropriate considerations in determining which specific items of property should be sold, or alternatively, distributed to a particular party. That was the case here.

### IV.

Finally, husband challenges the validity of a contempt finding and order relative to his failure to comply with temporary orders. In finding husband in contempt, the court determined that husband had not complied with previous court orders under which he had been ordered to pay his wife support and attorney's fees. The court thereupon directed entry of judgment for wife in the amount of $939, that being the total arrearages plus attorney's fees for the present proceeding. The court also entered an order which provided that the husband could purge himself of contempt by making installment payments to wife in the amount of $40 per month in addition to the regular monthly amounts due until the $939 judgment had been fully paid. That order also advised defendant that he could be sent to jail if he failed to make the $40 additional payments. We construe this to be a remedial contempt order as opposed to a punitive one.

▇▇▇ As a procedural matter, the enforcement of an order for past due support is most often accomplished by a proceeding in contempt. However, installments of support may be reduced to final judgments if unpaid on the dates they become due. *Treaster v. Laird*, 33 Colo.App. 297, 519 P.2d 1231 (1974). Once a judgment has been entered establishing a fixed sum of money due for support arrearages, that judgment has the same finality as other money judgments and execution may issue upon it in the same manner as with other judgments. *Burke v. Burke*, 127 Colo. 257, 255 P.2d 740 (1953).

▇▇▇ We hold that entry of a judgment for past due support payments is an exclusive remedy; such judgments and remedial contempt orders are alternative, not cumulative, remedies. By protecting husband from execution so long as $40 per month is paid, the trial court's contempt order has the effect of diminishing the rights wife has obtained upon entry of the judgment. *See Igney v. Igney*, 303 Ill.App. 563, 25 N.E.2d 608 (1940). Entry of a judgment, or judgments, for *past due* support payments must be entered when requested by the obligee. *Burke, supra.* No such request was made here. When entered, such judgments carry with them the full panoply of remedies available generally to judgment creditors to assist them in collecting their judgments. *Burke, supra.* Unless and until the beneficiary requests that a judgment be entered, the court may enforce compliance with its unsatisfied orders by using its remedial contempt powers including the threat of imprisonment, but it may not do so after entry of judgment.

▇▇▇ The power of the trial court to *punish* the husband for violating its order by a penal contempt sentence, imposed to vindicate the dignity of the court, is not affected by the rule we here announce. That is a matter between the husband and

the court, separate and apart from whatever remedial orders the court may enter to aid the wife in obtaining the money to which she is entitled. Thus, punishment in the form of a jail sentence or a fine may, in a proper case, be imposed in addition to whatever remedial option may be selected. If such punishment, however, is conditioned upon the contemnor's future performance of a duty he has to a third person, then the contempt order is no longer punitive, but becomes remedial.

Furthermore, we note that here, even if the trial court had entered only the remedial contempt order, its order did not comply with the requirement that it be supported by findings of fact demonstrating the husband's present ability to pay the additional $40. *Marshall v. Marshall*, 191 Colo. 165, 551 P.2d 709 (1976); *In Re Marriage of Hartt*, Colo.App., 603 P.2d 971 (1979).

We have considered other arguments raised by the parties and have found them to be without merit.

The contempt order is set aside and the judgment for arrearages due is reversed, and the matter is remanded to the trial court with directions either to enter a remedial contempt order consistent with the views expressed in this opinion, or to enter a money judgment for arrearages and attorney fees now due.

In all other respects the decree is affirmed.

KELLY and STERNBERG, JJ., concur.